UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOMO NGUYEN,<br><br>    Plaintiff,<br><br>v.<br><br>SMTC MANUFACTURING CORPORATION OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 24-cv-07394-JST<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: ECF No. 21 |

Before the Court is Plaintiff Momo Nguyen's motion to remand this case to Alameda County Superior Court. ECF No. 21. The Court will grant the motion.

## I.   BACKGROUND

Nguyen originally filed this action in Alameda County Superior Court on January 18, 2023, against Defendants SMTC Manufacturing Corporation of California ("SMTC Manufacturing") and CheckOne, Inc. *See* ECF No. 1-1. Nguyen alleged that Defendants: (1) failed to pay all overtime wages; (2) failed to pay all sick time; (3) failed to provide proper meal periods; (4) failed to provide proper rest periods; (5) failed to provide accurate itemized wage statements; (6) failed to pay timely final wages; (7) failed to reimburse necessary business expenses; and (8) violated California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq*. *See id.* ¶¶ 43–84. She filed the action on behalf of herself and the following proposed classes: (1) all non-exempt employees who work or worked for Defendants in California, during the four years immediately preceding the filing of the Complaint through the date of trial; (2) all non-exempt employees who worked for Defendants in California and who worked overtime hours during at least one shift, during the four years immediately preceding the filing of the Complaint through the date of trial; (3) all employees who work or

1  worked for Defendants in California, during the one year immediately preceding the filing of the

2  Complaint through the date of trial; and (4) all employees who work or worked for Defendants in

3  California and who left their employ during the three years immediately preceding the filing of the

4  Complaint through the date of trial.  *Id.* ¶ 35.

5        On May 24, 2023, Nguyen added 40 HRS, Inc. as a defendant in the action.  ECF No.

6  1 ¶ 23.  On June 12, 2024, Nguyen, SMTC Manufacturing, CheckOne, Inc., and 40 HRS, Inc.

7  attended an all-day mediation.  *Id.* ¶ 69.  During the mediation, Nguyen made a settlement demand

8  above $5 million.  *Id.*[1]  On October 15, 2024, Nguyen filed another amendment to her complaint,

9  identifying SMTC Corporation (together, with SMTC Manufacturing, the "SMTC Defendants") as

10  an additional defendant.  ECF No. 1 ¶ 45.

11        On October 23, 2024, SMTC Corporation filed a notice of removal of the case to this

12  Court, invoking subject matter jurisdiction under the Class Action Fairness Act of 2005

13  ("CAFA"), 28 U.S.C. § 1332(d).  *See* ECF No. 1.  On November 13, 2024, 40 HRS, Inc. filed a

14  motion to compel arbitration.  ECF No. 12.  That same day, the SMTC Defendants also filed a

15  motion to compel arbitration as well as a motion to deny class certification.  ECF Nos. 16, 17.  On

16  November 22, 2024, Nguyen filed the motion to remand currently before the Court.  ECF No. 21.

17  **II.  LEGAL STANDARD**

18        "[A]ny civil action brought in a [s]tate court of which the district courts of the United

19  States have original jurisdiction, may be removed by a defendant . . . to [a] federal district court."

20  28 U.S.C. § 1441(a).

21        CAFA "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1),

22  if the class has more than 100 members, the parties are minimally diverse, and the amount in

23  controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct.

24  547, 552 (2014) (citing § 1332(d)(2), (5)(B)).  In a CAFA case, "a defendant's notice of removal

25  need include only a plausible allegation that the amount in controversy exceeds the jurisdictional

---

[1] Nguyen does not appear to dispute that she made a settlement demand above $5,000,000 at the mediation, but does, as discussed below, dispute the reliability of that figure.  *See, e.g.*, ECF No. 21 at 14.

2

threshold." *Id.* at 554. If, however, "a defendant's assertion of the amount in controversy is challenged," then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee*, 135 S. Ct. at 554). The parties may rely on "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). CAFA thus requires a court to determine the amount in controversy based on "consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. Accordingly, "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

While a defendant bears the burden of demonstrating that CAFA's amount-in-controversy requirement is met, no additional presumption against removal jurisdiction applies in CAFA cases. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) ("Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal."); *see also Dart Cherokee*, 135 S. Ct. at 554.

### III. DISCUSSION

Nguyen argues that this case should be remanded because (1) SMTC Corporation's notice of removal was untimely, and (2) the SMTC Defendants fail to prove that the amount in controversy exceeds $5 million. ECF No. 21 at 10–16. Because the Court grants the motion on the basis that the SMTC Defendants failed to carry their burden to prove that the amount in controversy exceeds $5 million, the Court does not reach Nguyen's argument regarding timeliness of removal.

Here, Nguyen's complaint does not pray for damages in a specific amount. ECF No. 1-1 at

3

19–20. The SMTC Defendants' opposition calculates the amount in controversy as follows:

|                           |                   |
|---------------------------|-------------------|
| Rest Break Premiums:      | $2,849,587        |
| Waiting Time Penalties:   | $1,646,400        |
| Wage Statement Damages:   | $1,083,550        |
| Attorneys' Fees:          | $1,394,884.25[2]  |

ECF No. 31 at 11–19.[3]  In total, the SMTC Defendants assert $6,974,421.25 in controversy. *Id.* at 21.[4]

## A.  Settlement Demand

The SMTC Defendants argue that the amount-in-controversy requirement is satisfied because Nguyen made a demand in the parties' mediation above $5 million. *See* ECF No. 31 at 8; ECF No. 1 ¶¶ 63–71.  As a preliminary matter, the parties disagree over whether the settlement demand is admissible at all in this context as evidence of the amount in controversy. *Compare* ECF No. 21 at 14–16 (arguing that the settlement demand is confidential and inadmissible under the California rules of evidence governing mediation privilege) *with* ECF No. 31 at 8–9 (arguing that the California mediation privilege does not apply to evidence of the amount in controversy for removal).  The Court assumes without deciding that the settlement demand is admissible for determining the amount in controversy because the Court finds that, even if admissible, the settlement demand is not reliable enough to allow the SMTC Defendants to carry their burden.

When Nguyen asserted during the mediation that the claims in this case put more than $5 million in controversy, she based that contention on the putative class count provided by the SMTC Defendants prior to the mediation. *See* ECF No. 21-1 at 10.  But Defendants subsequently revised that figure downward:  five months after the mediation took place, the SMTC Defendants

---

[2] 899 F.3d 785, 793-94 (9th Cir. 2018).  "The amount in controversy may include . . . attorneys' fees awarded under fee shifting statutes." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (citation omitted).

[3] The SMTC Defendants did not provide any estimates for Nguyen's other causes of action: failure to pay overtime wages; failure to pay all sick time; meal period violations; failure to reimburse for necessary business expenses; and unfair competition.

[4] To the extent the SMTC Defendants' opposition contains new facts or calculations, the Court treats them "as an amendment to [SMTC Corporation's] notice of removal." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002); *see also Williams v. ETC Inst.*, No. 18-cv-01011-MEJ, 2018 WL 3105117, at *9 n.9 (N.D. Cal. June 25, 2018).

sent an email to Nguyen's counsel stating that they "have learned that the putative class count [they] provided in advance of mediation was inflated because" they inadvertently double counted "a significant number of individuals who were employed by 40 HRS, Inc. and placed at SMTC Corporation, who later were hired directly by SMTC Corporation." *Id.*  That reduction undermined whatever figures were based on Defendants' prior, higher class count.

The SMTC Defendants try to explain that the "reduction in the number of putative class members is insufficient to rebut the fact that Plaintiff's valuation of her own case exceeds $5 million because:" (1) Nguyen has not offered any evidence that the reduction of putative class members reduces her valuation of the case below $5 million; (2) while the SMTC Defendants confirmed a reduction in the number of putative class members, they confirmed that their count of the number of workweeks worked by the putative class members remained the same; (3) the amount placed in controversy has increased by another six-month period since the pre-mediation data disclosure; and (4) Nguyen has "offered no other evidence indicating that her case puts less than $5 million in controversy."  ECF No. 31 at 21–22.

These arguments are not persuasive.  First, it is the *removing party's* burden to demonstrate that the amount-in-controversy requirement is satisfied.  *Ibarra*, 775 F.3d at 1199; *see also Townsend v. Brinderson Corp.*, No. 14-cv-5320 FMO-RZX, 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015) ("Numerous cases after *Dart Cherokee* have concluded, either explicitly or implicitly, that while a plaintiff may rebut defendant's evidence with his or her own evidence, he or she need not do so in order to prevail on a motion to remand.") (collecting cases).  Nguyen has no obligation to put forward evidence affirmatively proving that her case puts less than $5 million in controversy.

Second, while the double counting of the putative class members may not have affected the number of workweeks worked by individual class members, it nonetheless affected the total potential damages.  According to the SMTC Defendants' own calculations, some categories of damages in this case are calculated based on not just the number of workweeks but also on the number of putative class members.  For example, the SMTC Defendants calculated the wage statement and waiting time penalties by multiplying the number of putative class members by the

5

assumed rates of violation and corresponding penalties. *See* ECF No. 31 at 15–16.

Third, while the amount placed in controversy may have increased since the pre-mediation data disclosure, the Court has no way of calculating whether and how this amount offsets the amount inflated by the double counting of putative class members. Given the various issues with the calculations underlying Nguyen's mediation settlement demand, the better course would be to examine the updated figures offered now by the SMTC Defendants for the purpose of specifically evaluating the amount in controversy.

### B.     Rest Breaks

To calculate the amount in controversy for the rest-break claim, the SMTC Defendants first identified the number of shifts worked by the putative class members that were 3.5 hours or more—the threshold at which an employee becomes entitled to a rest break under California law—between January 18, 2019[5] and April 30, 2024. *See* ECF No. 31 at 13–14. They then multiplied the number of shifts in each year of that time period by the applicable California minimum wage of that year and added those numbers together.[6] *See id.* at 14–15. Finally, they added together the dollar values for each of those years within that time period. *See id.* In performing these calculations, the SMTC Defendants assumed a violation rate of 100%, meaning they assumed that there was a rest-break violation for every single qualifying shift in this time period. ECF No. 31 at 11–13.

The parties' main dispute is over the SMTC Defendants' assumed violation rate. Nguyen contends that the SMTC Defendants assume an inflated violation rate that is neither supported by any evidence nor based on the allegations of the complaint. *See* ECF No. 32 at 9–12. To the extent that Nguyen argues that the SMTC Defendants have failed to provide more concrete extrinsic evidence such as "timekeeping or payroll data," ECF No. 32 at 13, the Ninth Circuit's

---

[5] The statute of limitations for a rest-break claim under Section 226.7 is four years. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005). And the complaint was filed on January 18, 2023. *See* ECF No. 1-1; ECF No. 31 at 13.

[6] For example, for the calendar year 2019, the SMTC Defendants used the following formula: $12.00 x 11,203 shifts of at least 3.5 hours from January 18, 2019, to December 31, 2019 = $134,436. ECF No. 31 at 14.

6

recent decision in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025), all but forecloses Nguyen's argument. In *Perez*, the court vacated a remand order that had imposed the kind of "demanding evidentiary burden" that Nguyen contends is required here. *Id.* at. 806. There, the district court had faulted the defendant for making assumptions of violation rates based on complaint language that the employer had violated wage laws "at times" and "throughout the statutory period." *Id.* at 806–07. In vacating the remand order, the Ninth Circuit reiterated that a removing defendant "is permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy," and clarified that "while 'those assumptions cannot be pulled from thin air,' they can be 'founded on the allegations of the complaint' and do not necessarily need to be supported by evidence." *Perez*, 131 F.4th at 808 (first quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019), then quoting *Ibarra*, 775 F.3d at 1199, and last quoting *Arias*, 936 F.3d at 925)).

Nonetheless, Nguyen is correct that the assumed violation rate must still be "reasonable." *Id.* (explaining that the "district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable'" (quoting *Jauregui*, 28 F.4th at 993)). The Ninth Circuit also addressed the issue of assumed violation rates in *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015). There, it rejected defendant Manheim's assumed 100 percent violation rate, explaining that "[b]ecause the complaint does not allege that Manheim universally, on each and every shift, violates labor laws by not giving rest and meal breaks, Manheim bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id.* at 1199.

The SMTC Defendants cite *Bell v. CEVA Logistics U.S., Inc.*, No. 5:19-cv-00352-SVW-KK, 2019 WL 6357973, at *1 (C.D. Cal. July 15, 2019), to argue that "a defendant may assume a 100% violation rate when a plaintiff alleges the defendant never relinquished control over putative class members during their rest breaks—even when they took rest." ECF No. 31 at 11–12. But that case did not stand for such a broad proposition. Instead, the Court there accepted the proposed 100% violation rate for the rest break claim because the plaintiff alleged violations that "occurred during *every* rest period." *Bell*, 2019 WL 6357973, at *1 (emphasis in original) (citing

7

*Feao v. UFP Riverside, LLC*, No. CV 17-3080-PSG, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) ("In addition, Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation[s] that would preclude a 100 percent violation rate.")). Here, Nguyen does not allege a violation for every rest period. Rather, she qualifies her allegations by contending that non-exempt employees "often" could not take rest breaks and "were not provided with all" rest breaks. *See* ECF No. 1-1 ¶ 26. Similarly, while she alleges a general policy of being required to remain on the premises during rest periods, she does not allege that this happened during every rest period, and the SMTC Defendants have not provided any specific evidence to support that it did. *See id.*; *see also id.* ¶ 28 ("*Each time* Plaintiff and other non-exempt employees were unable to take a compliant rest period, Defendants failed and continue to fail to adequately pay rest period premium payments at the 'regular rate of pay' as required by Labor Code § 226.7.") (emphasis added).

As courts regularly find in similar circumstances, Defendants' assumption of a 100% violation rate is therefore not "reasonable." *See Brown v. Janus of Santa Cruz*, No. 21-CV-00094-BLF, 2021 WL 3413349, at *5 (N.D. Cal. Aug. 5, 2021) ("Indeed, this Court finds it wholly implausible that Defendant withheld each and every meal break from each and every employee [based solely on allegations of a "uniform" policy]. Nor does Defendant offer the Court any evidence that would render a 100% violation rate non-speculative."); *see also Ibarra* 775 F.3d at 1198-99 (finding that a "'pattern and practice' of doing something does not necessarily mean always doing something"); *Chin v. Cole Haan, LLC*, No. 16-CV-02154-JD, 2016 WL 7211841, at *2 (N.D. Cal. Dec. 13, 2016) (finding an allegation that defendant "engaged in a uniform policy" of wage abuse did not imply a 100% violation rate); *Brown v. United Airlines, Inc.*, No. 19CV537-MMA (JLB), 2019 WL 2952200, at *5 (S.D. Cal. July 9, 2019) (same); *Amirian v. Umpqua Bank*, No. CV-17-7574-FMO-FFMX, 2018 WL 3655666, at *5 (C.D. Cal. July 31, 2018) (same).

Aside from relying on the language of the complaint, the SMTC Defendants do not provide any actual evidence or explanation as to why a 100% violation rate would accurately reflect the amount put in controversy by the rest-break claim.

The Court notes that courts in this district appear most commonly to find that allegations

8

1    that an employer "regularly" failed to provide class members with rest breaks, coupled with a
2    "uniform" policy of failing to pay class members for these rest periods, is sufficient to support an
3    assumed violation rate of one missed rest break per week—or a 20% violation rate. *Gomez v.*
4    *Roadrunner Transportation Servs., Inc.*, No. 19-CV-02748-JST, 2019 WL 13397802, at *3–4
5    (N.D. Cal. Sept. 24, 2019) (applying a 20% violation rate in place of an unreasonable 60%
6    violation rate); *Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 23-CV-06581-HSG, 2024
7    WL 1772863, at *6 (N.D. Cal. Apr. 23, 2024) (finding a 20% violation rate for rest breaks to be
8    reasonable based on language alleging a "pattern and practice" of wage abuse); *Trigueros v.*
9    *Stanford Fed. Credit Union*, No. 21-CV-01079-BLF, 2021 WL 2649241, at *4 (N.D. Cal. June 28,
10   2021) (finding that a 20% violation rate was reasonable when plaintiff pled a "policy and practice"
11   of withheld meal breaks); *Mendoza v. Nat'l Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL
12   2929745, at *4 (N.D. Cal. July 8, 2019); *see also Chavez v. Pratt (Robert Mann Packaging), LLC*,
13   No. 19-cv-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Miller v. A-1 Express*
14   *Delivery Servs., Inc.*, No. 16-cv-06251-WHO, 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017);
15   *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *5
16   (N.D. Cal. Sept. 2, 2016); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D.
17   Cal. 2016).
18       Although other courts have approved either more or less generous assumptions, the 20%
19   rate appears to represent the median. *Compare Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-
20   EMC, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (finding that "a 100% violation rate is
21   reasonable in this context") *and Brown*, 2021 WL 3413349, at *5 (applying a 50% violation rate
22   in place of an unreasonable 100% violation rate), *with Wilson v. Te Connectivity Networks, Inc.*,
23   No. 14-CV-04872-EDL, 2016 WL 9114914, at *4 (N.D. Cal. Oct. 3, 2016) (assuming one missed
24   period per month). As this Court has indicated before, the Court's "view on this subject may
25   evolve as the case law develops, but in the present case the Court concludes that a weekly
26   violation rate, seemingly the most commonly applied, is reasonable." *Gomez*, 2019 WL
27   13397802, at *4.
28       Applying a 20% violation rate reduces the amount in controversy for the rest break claim

9

1    to $569,917.40.

**C.    Waiting Time and Wage Statement Penalty**

As with Nguyen's rest-break claim, the SMTC Defendants assume a violation rate of 100% for Nguyen's waiting-time and wage-statement-penalty claim. *See* ECF No. 31 at 15–19; ECF No. 32 at 13–15.

Beginning with the waiting time penalty claim, the SMTC Defendants support their assumption by pointing to allegations that "Defendants willfully failed to pay the Waiting Time Subclass for all hours worked, including . . . rest period premiums . . . prior to or upon termination or separation from employment with Defendants" and that "Defendants are liable to the Waiting Time Subclass for waiting time penalties amounting to thirty (30) days [sic] wages for Plaintiff and the Waiting Time Subclass." ECF No. 31 at 16–17 (quoting ECF No. 1-1 ¶¶ 72–73). Because the willful nonpayment of even a single dollar would give rise to a full waiting time penalty for each day that amount has not been paid following termination, a single wage violation—for example, a nonpayment for a missed meal period—per class member would be sufficient to sustain a 100% violation rate, if that penalty accrued for the full 30-day statutory maximum.

Because Nguyen's complaint itself alleges that at least Nguyen and the "Waiting Time Subclass" are entitled to the statutory maximum 30-day waiting time penalty, the only question is whether it is reasonable to assume that 100% of all Class Members were owed at least some wages for more than 30 days after their separation from employment. The Court concludes that it is. A 100% violation rate is reasonable "as there is nothing in the complaint or the record to suggest that [SMTC] Defendants paid employees these unpaid wages [for the rest break violations suffered at an assumed rate of once per week per employee] at some point during the month after they separated from employment." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013); *see also Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) ("Defendant was reasonable in estimating, based on plaintiff's allegations [that assistant managers "routinely" missed meal periods], that all members of the proposed class—all assistant managers—would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty."); *Cavada v. Inter-*

*Cont'l Hotels Grp., Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption."); *Gonzalez v. Barnard Construction Co.*, No. 22-cv-00534-AJB-KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("[O]ther district courts have concluded that allegations of the willful failure to timely pay final wages . . . were sufficient to support . . . a 100% rate.").

While it may be true that the language in the complaint "could support a lower violation rate as easily as it could support the [100% rate] that [Defendants] assumed . . . that does not automatically render the rate assumed by [Defendants] unreasonable." *Perez*, 131 F.4th at 810. "And if [Nguyen] believed that some other assumption would have been *more* reasonable, she was free to propose that rate" or use a more specific phrase when drafting the complaint. *Id.*

Similarly, SMTC Defendants calculate the wage amount in controversy for Nguyen's wage statement claim by examining their records for the number of putative class members who worked at least 41 qualifying pay periods in the relevant time period and thus were eligible for the $4,000 statutory maximum (156) and the number of putative class members who worked 40 or fewer pay periods that included at least one shift of 3.5 hours in length (325). ECF No. 31 at 15–16. The SMTC Defendants assume that for each of these putative class members, they received an inaccurate wage statement for every pay period during this period. *See id.* at 16. For similar reasons as those stated in analyzing the waiting time penalty claim, the Court finds that this 100% violation rate is a reasonable assumption, given that an assumed violation of one missed rest break per week for each class member would result in an inaccurate wage statement for every pay period for all class members. *See* ECF No. 1-1 ¶ 65 ("As a result of Defendants [sic] failure to pay Plaintiff and the Wage Statement Subclass for all . . . rest period premiums at the appropriate legal rate, Defendants failed to include required information on Plaintiff and the Wage Statement Subclass' wage statements, including, but not limited to, the gross wages earned, the net wages earned in violation of Labor Code section 226(a)(1,2,5, and 9).").

### D. Attorneys' Fees

The SMTC Defendants argue that the Court should add 25 percent of the total amount put in controversy by the claims above to account for attorneys' fees at stake in the litigation. ECF No. 31 at 20.

The aggregate amount placed in controversy by Nguyen's rest period claim ($569,917.40), waiting time claim ($1,646,400), and wage statement penalty claim ($1,083,550) is $3,299,867.40. Even if the Court were to add a 25% attorney's fee of $824,966.85,[7] the evidence would only support an amount in controversy of $4,124,834.25.[8] This figure falls short of the $5,000,000 threshold required by CAFA. 28 U.S.C. § 1332(d).

The Court notes that Nguyen brings other claims in his complaint that the SMTC Defendants did not rely on in calculating the amount in controversy. While it is possible that the SMTC Defendants could have satisfied the $5,000,000 threshold had they made a showing as to the potential damages resulting from those claims, they have chosen not to do so here, and the Court may not carry their burden for them. *See Ibarra*, 775 F.3d at 1197 ("[I]f a defendant wants

---

[7] The Ninth Circuit "ha[s] declined to adopt a per se rule that the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) (citation and quotation omitted). As a result, district courts in this circuit are split on the question whether to assume an attorney's fee of 25% in determining the amount in controversy. Some have concluded that "a 25% attorneys' fee is a proper and commonly used benchmark, especially where . . . that figure is uncontested." *Mendieta v. Williams Scotsman, Inc.*, No. 24-cv-02090-MWF (SPX), 2025 WL 104095, at *4 (C.D. Cal. Jan. 15, 2025); *Jacob v. CSL Plasma Inc.*, No. 24-CV-01807-H-DEB, 2024 WL 5004529, at *6 (S.D. Cal. Dec. 6, 2024) (assuming 25% benchmark fee). Others have read the Ninth Circuit's declination to adopt a per se rule to mean that defendants must present evidence to support a 25% (or any other) figure. *E.g., Banuelos v. Dominos Pizza LLC*, No. 5:24-CV-07085-BLF, 2025 WL 786350, at *9 (N.D. Cal. Mar. 12, 2025); *Tennison v. Hub Grp. Trucking, Inc.*, No. LA-20-cv-05076-JAK(SPX), 2020 WL 7714702, at *8 (C.D. Cal. Dec. 28, 2020). Because the SMTC Defendants fail to meet the CAFA jurisdictional threshold regardless of whether their assumed attorney's fees are included, the Court does not address the issue further.

[8] Nguyen also disputes whether a claim for attorneys' fees can be awarded for rest period violation and waiting time penalty claims. *See* ECF No. 32 at 16. At least one other court has identified a similar concern as a basis for rejecting a 25% attorney's fee estimate. *Banuelos*, 2025 WL 786350, at *9 (finding that the California Supreme Court's explanation that California Labor Code § 1194(a) "does not permit recovery of attorneys' fees for those who prevail in an action for rest periods or a number of other employment violations" means "it is not clear that attorneys' fees are recoverable on all of Plaintiff's various claims"). Again, however, because even adding attorneys' fees does not push the proffered amount in controversy over the $5 million threshold, the Court does not address this argument.

to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million."); *see also Brown*, 2021 WL 3413349, at *7–8 ("As it were, Defendant has not presented any argument calculating the amount placed in controversy by the remaining claims or evidence in support thereof.  The Court thus concludes that Defendant has failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.").

## IV.     REQUEST FOR ATTORNEYS' FEES

Nguyen moves for attorneys' fees relating to her motion to remand.  Courts may award attorney' fees where the removing party lacked an objectively reasonable basis for seeking removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Because the SMTC Defendants raised legitimate arguments in support of their notice of removal, the Court concludes that attorneys' fees are not warranted.

## V.     MOTION TO COMPEL ARBITRATION AND MOTION TO DENY CLASS CERTIFICATION

Because the Court has resolved the jurisdictional question above and determined that it lacks jurisdiction over this case, the Court does not address the motions to compel arbitration at ECF Nos. 12 and 16 or the motion to deny class certification at ECF No. 17.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to remand.  The Clerk shall remand this action to Alameda County Superior Court and close the case.

**IT IS SO ORDERED.**

Dated: August 6, 2025



_____
JON S. TIGAR
United States District Judge

13